UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| CHIUBA E. OBELE, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civil No. 20-11117-LTS |
| ) | |
| TOWN OF BROOKLINE, BROOKLINE ) | |
| POLICE DEPARTMENT, BRIAN ) | |
| MERRIGAN, DAVID PILGRIM, BORIS ) | |
| VRAGOVIC, TALIB MORELAND ) | |
| ) | |
| Defendants. ) | |

ORDER ON PLAINTIFF'S MOTION TO AMEND (DOC. NO. 30)
AND DEFENDANTS' MOTIONS TO DISMISS (DOC. NOS. 19, & 21)

March 4, 2021

SOROKIN, J.

In this action, Plaintiff Chiuba Obele, proceeding pro se, alleges his federal constitutional rights were violated by officers in the Brookline Police Department. Before the Court are motions to dismiss brought by Defendants Brian Merrigan, David Pilgrim, and Boris Vragovic (the "Officer Defendants") and Defendants the Town of Brookline and the Brookline Police Department (the "Entity Defendants"). Also before the Court is a motion by Obele to amend his operative complaint. For the reasons which follow, the Officer Defendants' Motion to Dismiss (Doc. No. 21),[1] the Entity Defendants' Motion to Dismiss (Doc. No. 19), and Plaintiff Obele's Motion to Amend (Doc. No. 30) are ALLOWED IN PART and DENIED IN PART as detailed herein.

---

[1] Citations to "Doc. No. __" reference documents appearing on the court's electronic docketing system; pincites are to the page numbers in the ECF header.

I.   BACKGROUND

On June 11, 2020, Obele filed a Complaint in which he brought claims against several Brookline police officers and the legal entities which employ them. He also brought claims against a private citizen, Talib Moreland. In his Complaint, Obele described a series of interactions between himself, Moreland, and several Brookline police officers. Doc. No. 1. According to Obele, his girlfriend attempted to evict Moreland from her apartment in the summer of 2017. This action led to conflict between Obele and Moreland. Partly due to the escalating tensions between himself and Moreland, Obele was frequently in contact with Brookline officers over a period of several months. This case concerns Obele's allegations that his rights were violated during these interactions.

Obele filed an Amended Complaint on October 2, 2020. Doc. No. 17. Soon thereafter the Officer and Entity Defendants separately moved to dismiss the Amended Complaint for failure to state a claim. Doc. Nos. 19, 21.[2] Obele opposed the Officer Defendants' Motion, Doc. Nos. 26, 27, 28, but did not oppose the Entity Defendant's Motion.[3] After briefing finished, Obele moved to again amend his operative complaint. Doc. No. 30. His Proposed Second Amended Complaint would (1) remove Brookline Police Department as a defendant, (2) allege certain new facts regarding Obele's interaction with Officer Merrigan, (3) bring a new claim against Moreland, (4) add two supervisory defendants to the action, (5) introduce a common law false arrest claim against Officer Pilgrim, and (6) bolster Obele's allegations against the Town of Brookline. The Officer and Entity Defendants have filed a consolidated Opposition to Obele's

---

[2] Although titled a Motion to Dismiss, docket entry eighteen appears to be a memorandum in support of the Officer Defendant's Motion to Dismiss (Doc. No. 21). The Court rules this document was filed as a motion in error. The Clerk shall correct the docket.
[3] Obele opposes the Entity Defendant's Motion to Dismiss in the thirty-five-page memorandum he filed in support of his Motion to Amend. Doc. No. 31.

Motion to Amend, arguing his proposed amendment is futile. Doc. No. 36. The motions are fully briefed and ripe for disposition.

II.     LEGAL STANDARDS

   A.     Motion to Amend

Under Fed. R. Civ. P. 15(a)(2), leave to amend a complaint shall be "freely give[n] . . . when justice so requires." However, courts have discretion to deny leave to amend for several reasons, including "futility of amendment." U.S. ex rel. Gagne v. City of Worcester, 565 F.3d 40, 48 (1st Cir. 2009). When considering an opposition to a motion to amend on the ground of futility, courts must apply the standard applicable to a motion to dismiss under Fed. R. Civ. P. 12(b)(6). Hatch v. Dep't for Child., Youth & Their Fams., 274 F.3d 12, 19 (1st Cir. 2001).

   B.     Motion to Dismiss for Failure to State a Claim

"In resolving a motion to dismiss, a court should employ a two-pronged approach. It should begin by identifying and disregarding statements in the complaint that merely offer 'legal conclusion[s] couched as . . . fact[ ]' or '[t]hreadbare recitals of the elements of a cause of action.'" Ocasio-Hernandez v. Fortuno-Burset, 640 F.3d 1, 12 (1st Cir. 2011) (alterations in original) (quoting Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)). The Court must also disregard allegations which, "while not stating ultimate legal conclusions, are nevertheless so threadbare or speculative that they fail to cross 'the line between the conclusory and the factual.'" Peñalbert–Rosa v. Fortuño–Burset, 631 F.3d 592, 595 (1st Cir. 2011) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 557 n.5 (2007)). "Non-conclusory factual allegations in the complaint must then be treated as true, even if seemingly incredible." Ocasio-Hernandez, 640 F.3d at 12. The Court must also draw "all reasonable inferences in favor of the plaintiff[]." Watterson v. Page, 987 F.2d 1, 3 (1st Cir. 1993). If that factual content, so taken, "allows the court to draw the

reasonable inference that the defendant is liable for the misconduct alleged," then the claim has facial plausibility. Iqbal, 556 U.S. at 678; Fed. R. Civ. P. 8(a). A complaint by a pro se litigant must be "liberally construed" and "held to less stringent standards than formal pleadings drafted by lawyers." Estelle v. Gamble, 429 U.S. 97, 106 (1976) (citation omitted).

    C.    Statutory Liability for Constitutional Violations

"[A] litigant complaining of a violation of a constitutional right does not have a direct cause of action under the United States Constitution but must utilize 42 U.S.C. § 1983." Arpin v. Santa Clara Valley Transp. Agency, 261 F.3d 912, 925 (9th Cir. 2001). Section 1983 provides that any person acting under the color of state law who "subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured." 42 U.S.C. § 1983.

    D.    Qualified Immunity

Qualified immunity protects government officials "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Pearson v. Callahan, 555 U.S. 223, 231 (2009) (quotation marks and citation omitted). "The qualified immunity analysis has two parts." Cortes-Reyes v. Salas-Quintana, 608 F.3d 41, 51 (1st Cir. 2010). A court must decide whether the facts shown by the plaintiff make out a violation of a constitutional right and whether the right was "clearly established" at the time of the alleged violation by the defendant. Pearson, 555 U.S. at 231. The law is "clearly established" if courts have ruled that "materially similar conduct was unconstitutional," or if there is a previously identified general constitutional principle that

4

applies "with obvious clarity to the specific conduct at issue." Jennings v. Jones, 499 F.3d 2, 16 (1st Cir. 2007).

III.     DISCUSSION

Due to the overlap between the standard for assessing the Defendants' Motions to Dismiss and Obele's Motion to Amend, the Court shall consider all three motions together. The following discussion proceeds defendant by defendant to determine whether, based on the allegations of the Proposed Second Amended Complaint, Obele has successfully stated a claim as to any. The Court shall not discuss the claims relating to Moreland, as he has not appeared.

    A.     Allegations Concerning Officer Merrigan

Obele alleges that on October 30, 2017, he was waiting for his girlfriend in her apartment while she was at a medical appointment when he accidentally triggered her burglar alarm. Doc. No. 30-1 ¶¶ 87–88. Officer Merrigan responded to the alarm, asked to see Obele's identification, and became suspicious after determining Obele did not reside in the apartment. Id. ¶ 96. Obele claims Merrigan then violated his rights during this interaction in various ways, detailed below. At the end of this first interaction, Merrigan ordered Obele to leave the apartment and then himself left the scene to resume his duties elsewhere. Id. ¶ 138. Obele waited until Merrigan left before reentering the apartment and confronting Moreland, after which the two entered into a physical altercation. Id. ¶¶ 138–143. Obele called the police. Id. ¶ 144. Merrigan returned to the apartment and Obele was issued a summons for assault and battery. Id. ¶¶ 144, 159.

According to Obele, Merrigan's actions during their initial interaction violated the Fourth Amendment (Count I) and the Equal Protection Clause of the Fourteenth Amendment (Count II). Merrigan denies he violated Obele's constitutional rights, claims he is entitled to qualified

immunity, and argues Obele's claim is barred by the holding of Heck v. Humphrey, 512 U.S. 477 (1994).

    1.    *Application of* Heck v. Humphrey

Heck does not apply. In Heck v. Humphrey, the United States Supreme Court held that "a § 1983 action that impugns the validity of the plaintiff's underlying conviction cannot be maintained unless the conviction has been reversed on direct appeal or impaired by collateral proceedings." Gilles v. Davis, 427 F.3d 197, 208–09 (3rd Cir. 2005) (citing Heck, 512 U.S. at 483). Obele concedes that he was summonsed for assault and battery in relation to his altercation with Moreland and that he later accepted pretrial probation as to that charge. Doc. No. 30-1 ¶¶ 159, 292. Even assuming without deciding that Heck encompasses the pretrial probation disposition imposed by the state court, Heck would still be inapplicable to the facts of this case as it only applies where success on a Section 1983 claim would "<u>necessarily</u> imply that [a prior] conviction was unlawful." Heck, 512 U.S. 487 n.7 (emphasis in original). Here, Obele's criminal charges are largely unrelated to his claims that Merrigan violated his constitutional rights during their initial interaction. Obele's charges stem from an altercation between himself and Moreland which took place after the interaction with Merrigan had finished. Obele waited until Merrigan had left the scene before returning to confront Moreland, meaning that Merrigan was not involved and, indeed, was not even present during the fight. Consequently, it is not possible for Obele's federal Section 1983 claim to undermine his earlier state proceeding. Heck is inapplicable.

    2.    *Count I: Fourth Amendment Analysis*

The Fourth Amendment protects "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." Carpenter v. United

States, 138 S. Ct. 2206, 2213 (2018) (quoting U.S. Const. amend. IV). Obele alleges that Merrigan violated his Fourth Amendment rights in several ways. The Court discusses each allegation in turn.

    **i. The Alleged Frisk Search.** Obele alleges Merrigan frisked him for weapons. Doc. No. 30-1 ¶ 121. Police officers have the authority to perform "a reasonable search for weapons" by "patting down [a suspect's] outer clothing," Terry v. Ohio, 392 U.S. 1, 27, 29 (1968), when, based on the "totality of the circumstances . . . the [officer has] a particularized, objective basis," United States v. McKoy, 428 F.3d 38, 39 (1st Cir. 2005), to suspect that an individual is armed and dangerous. Officer Merrigan responded to a burglar alarm without backup and, upon arriving at the residence, discovered a man who did not live there. Whether or not the resulting frisk search was justified, a reasonable officer in Merrigan's position would not have known he was violating the constitution. Merrigan is entitled to qualified immunity as to this claim.

    **ii. The Alleged Order that Obele Remove his Shirt.** Obele alleges Merrigan ordered him to remove his shirt after the initial warrantless pat-down search. Doc. No. 30-1 ¶ 22. Although a frisk search of a suspect's outer clothing is permissible, "to legitimize a search underneath a suspect's clothing, an officer must reasonably believe, based on the frisk, that weapons could still be present." United States v. Ortiz, 54 F. Supp. 3d 1081, 1092 (N.D. Cal. 2014); see Minnesota v. Dickerson, 508 U.S. 366, 373 (1993). Assuming Obele's allegations to be true and drawing all inferences in his favor—as the Court must at this stage—the Proposed Second Amended Complaint reveals no basis for requiring Obele to remove his shirt. This claim may proceed.

    **iii. The Alleged Search of Obele's Backpack.** Obele alleges Merrigan searched his backpack without a warrant or consent. Doc. No. 30-1 ¶ 126. A warrantless search of a container

is presumptively unreasonable. See United States v. Jacobsen, 466 U.S. 109, 114 (1984); see also United States v. Figueroa, 187 F.3d 623, at *3 (1st Cir. 1998) (unpublished table decision). Granting Obele all reasonable inferences, the Proposed Second Amended Complaint contains no factual allegations of exigent circumstances as might justify the alleged warrantless search. Consequently, Obele is entitled to proceed with this claim.

      **iv. The Alleged Seizure of Obele's Possessions.** Obele alleges Merrigan ordered him to turn over the contents of his wallet to Moreland. Doc. No. 30-1 ¶ 132. A police officer's order requiring a private citizen to forfeit his effects to a third party constitutes a "seizure" within the meaning of the Fourth Amendment. See Soldal v. Cook Cnty., 506 U.S. 56, 61 (1992). Seizures conducted without a warrant are presumptively unreasonable. United States v. Place, 462 U.S. 696, 701 (1983). As above, the facts alleged in the Proposed Second Amended Complaint do not reveal any exigent circumstances justifying the alleged warrantless seizure. Consequently, Obele may proceeding with this claim.

      **v. The Alleged Order that Obele Leave the Apartment.** Obele alleges Merrigan ordered him to leave the apartment in violation of the Fourth Amendment. Doc. No. 30-1 ¶ 133. As protectors of the public peace, officers may constitutionally order citizens in public places to move along or disperse. Cox v. Louisiana, 379 U.S. 536, 554–55 (1965); but see Shuttlesworth v. City of Birmingham, 382 U.S. 87, 90–91 (1965) (recognizing limits on this authority). This authority is diminished, however, in the context of a private residence. In Higgins v. Penobscot County Sheriff's Department, 446 F.3d 11, 14 (1st Cir. 2006) (per curiam), the First Circuit considered whether a police officer could be subjected to liability for ordering the lawful owner of a property to leave when the owner's right to be on the premises was disputed by others present on the scene and there was circumstantial evidence to suggest that the owner did not, in

fact, have a lawful right to be on the premises. Id. The First Circuit assumed the police officer's order may have violated the Constitution but granted the officer qualified immunity because the officer's order, based on the facts known at the time, was "neither plainly incompetent nor involved a deliberate violation of the law." Id. at 14–15. The same is true here. Officer Merrigan responded to a burglar alarm. Upon arriving at the premises, he discovered Obele, a man who could not prove he lived there. Id. ¶ 96. Moreland, an obvious resident of the apartment, then informed Merrigan that Obele did not have a right to be on the premises and, indeed, that Obele had broken into the premises and stolen his wallet. Id. ¶ 128. Under these circumstances, Merrigan's order that Obele leave the premises until the homeowner returned was "neither plainly incompetent nor involved a deliberate violation of the law." Higgins, 446 F.3d at 14–15. Merrigan is entitled to qualified immunity on this claim.

        3.     *Count II: Equal Protection Analysis*

Obele argues that Merrigan searched him and ordered him to leave because of his race, in violation of the Fourteenth Amendment's Equal Protection Clause. To support his claim, Obele alleges that Merrigan made several racially charged comments during their interaction. It is well established that governmental action may be subjected to scrutiny under several constitutional provisions, and that actions which may be permissible under one provision may be impermissible under another. See, e.g., Whren v. United States, 517 U.S. 806, 813 (1996) (rejecting Fourth Amendment claim but noting the same conduct, if done with discriminatory purpose, would violate the Fourteenth Amendment). It is equally well established that a state official violates the Fourteenth Amendment's Equal Protection Clause if they decide to selectively subject citizens to search or seizure because of their race. See Lopera v. Town of Coventry, 640 F.3d 388, 402 (1st Cir. 2011); Whren, 517 U.S. at 813 ("[T]he Constitution prohibits selective enforcement of the

law based on considerations such as race."). In order to prevail on such a claim, a plaintiff must plead minimally sufficient facts to plausibly allege they were treated differently from similarly situated citizens of another race and that the actions taken against them were motivated, at least in part, by their race. Flowers v. Fiore, 239 F. Supp. 2d 173, 178 (D.R.I. 2003), aff'd, 359 F.3d 24 (1st Cir. 2004).

At this early stage of the litigation, the law requires that Obele's factual allegations be accepted as true and that all reasonable inferences be drawn in his favor. See Ocasio-Hernandez, 640 F.3d at 12. Applying that standard, Obele has plausibly stated a claim under the Fourteenth Amendment as to Merrigan.

B.  Allegations Concerning Officer Vragovic

Obele alleges that on November 3, 2017, he overheard Moreland in his bedroom making nonspecific threats of violence, which Obele and his girlfriend understood to be threats against themselves. Doc. No. 30-1 ¶¶ 165–67. Obele and his girlfriend contacted the police. Soon thereafter, the police responded to the apartment and searched Moreland's room but discovered no illegal weapons or firearms. Id. ¶ 169, 182, 188. Officer Vragovic was among the officers who responded and, according to Obele, Vragovic made several insulting remarks about the fact Obele's girlfriend is older than him. Id. ¶¶ 174–181. After the search, Vragovic allegedly refused to arrest Moreland despite Obele's urging.[4] Count V of Obele's Proposed Second Amended Complaint alleges that Vragovic's refusal to arrest Moreland violated the Equal Protection Clause of the Fourteenth Amendment.

---

[4] The parties have assumed in their briefing that Vragovic made the decision to not arrest Moreland. Because the parties seem to agree that this may be fairly inferred from the allegations in Obele's Proposed Second Amended Complaint, the Court shall assume the same. The Court notes, however, that a more senior police officer appears to have been present on the scene, see Doc. No. 30-1 ¶ 178 (noting Police Lieutenant John Canney was present).

Obele has failed to state a claim. Unkind comments, even those made by police officers, do not themselves rise to the level of a constitutional violation. See Fortin v. Cox, No. 1:14-CV-00223-GZS, 2015 WL 773403, at *3 (D. Me. Feb. 24, 2015). And, in general, there is no constitutional right to have someone else arrested. Town of Castle Rock v. Gonzales, 545 U.S. 748, 768 (2005). Obele insists Vragovic chose to dismiss his complaints, in part, due to stereotypes about men who date older women, thereby denying him equal protection of the law.[5] Obele is correct that as a general matter a state may not "deny its protective services to certain disfavored minorities without violating the Equal Protection Clause." DeShaney v. Winnebago Cnty., 489 U.S. 189, 197 n.3 (1989) (citing Yick Wo v. Hopkins, 118 U.S. 356 (1886)). But the aged (and those they date) are not typically considered a disfavored minority because they have neither "experienced a 'history of unequal treatment' [n]or been subjected to unique disabilities on the basis of stereotyped characteristics not truly indicative of their abilities." Cleburn v. Celbrune Living Ctr., 473 U.S. 432, 441 (1985) (quoting Mass. Bd. of Ret. v. Murgia, 427 U.S. 307, 313 (1976)). Courts are consequently hesitant to second guess age-based classifications, meaning state actors "may discriminate on the basis of age without offending the Fourteenth Amendment if [doing so] is rationally related to a legitimate state interest." Kimel v. Fla. Bd. of Regents, 528 U.S. 62, 83 (2000); cf. Gerald Gunther, Foreword, The Supreme Court, 1971 Term, 86 Harv. L. Rev. 1, 8 (1972) (describing this form of judicial review as "minimal scrutiny in theory and virtually none in fact").

---

[5] Obele also argues Vragovic was motivated by racial animus. The only allegation to support this theory is Obele's claim that Vragovic used the word "brotha," in reference to Obele, while making a joke about the age of Obele's girlfriend. Doc. No. 30-1 ¶ 177. This lone remark is insufficient to plausibly allege racial animus.

Measured against this low standard, Obele has failed to state a claim. His Proposed Second Amended Complaint reveals ample legitimate and rational reasons for allowing Moreland to walk free. For example, neither Obele nor his girlfriend reported that Moreland made specific threats towards them, Moreland was cooperative with police officers, and Moreland had no illegal weapons in his room. Doc. No. 30-1 ¶ 186.

In any event, Vragovic is entitled to qualified immunity. Assuming the Equal Protection Clause does require that the police not discount a complainant's allegations because of the age difference between the complainant and the complainant's paramour, this right was not clearly established in November 2017. As Obele concedes, "there is no case law," Doc. No. 27 at 11, from any court that is analogous to the alleged facts of his case. And Obele has been unable to point to any judicial opinion suggesting, even as an abstract proposition, that such a right exists. Doc. No. 27 at 9–11. The Court's own research has revealed none. Nor does the Court believe such a right would be "obvious" to a reasonable officer, as Obele contends, given the low level of scrutiny traditionally given to age-based discrimination. Consequently, the claims against Defendant Vragovic are DISMISSED.

### C.   Allegations Concerning Officer Pilgrim

Obele alleges in his Proposed Second Amended Complaint that he was wrongfully arrested by Officer Pilgrim on November 18, 2017 in violation of both the Fourth Amendment (Count I) and state law forbidding false arrest and imprisonment (Count IX).[6] These claims both

---

[6] In Massachusetts, an arresting officer may be liable for false arrest or imprisonment unless the officer had reasonable grounds" for making the arrest. The requirement of "reasonable grounds" substantially overlaps with the constitutional requirement of probable cause and the Court therefore treats Counts I and IX as identical, for the purposes of this discussion. Sorenti v. Doyle, 2013 WL 1403489, at *4 (D. Mass. Apr. 4, 2013); Robinson v. Cook, 863 F. Supp.2d 49, 72 (D. Mass. 2012), aff'd, 706 F.3d 25 (1st Cir. 2013).

12

fail because Obele's factual allegations demonstrate that his arrest was supported by probable cause.

The Fourth Amendment permits police officers to conduct a warrantless arrest when they have probable cause to believe a crime has been committed in their presence. See Virginia v. Moore, 553 U.S. 164, 176–77 (2008). Under Mass. Gen. Laws ch. 268, § 32B, a person commits the offense of resisting arrest "if he knowingly prevents or attempts to prevent a police officer, acting under color of his official authority, from effecting an arrest . . . by . . . using or threatening to use physical force or violence against the police officer." A person is guilty of resisting arrest in Massachusetts whether or not the arresting officer had probable cause to initiate the arrest. See Commonwealth v. Moreira, 388 Mass. 596, 601 (1983) (holding that, absent use of excessive force, defendant had no right to resist even unlawful arrest).

In his Proposed Second Amended Complaint, Obele alleges that the police informed him they were going to arrest him after an altercation with Moreland on November 18th. Doc. No. 30-1 ¶¶ 275. Obele candidly admits that he resisted arrest and that these acts of resistance began before he was seized by the police. Id. ¶¶ 276, 278. Accepting Obele's allegations as true, the arresting officers therefore had probable cause to suspect Obele of the crime of resisting arrest when they seized him. It makes no difference whether the police originally intended to arrest Obele for an entirely different crime—the existence of probable cause for one crime (here, resisting arrest) is all that is needed to justify an arrest. See Davenpeck v. Alford, 543 U.S. 146, 153–54 (2004). Obele spends considerable energy arguing the officers did not have probable cause to arrest him when they asked him to stand and place his hands behind his back. But the officer's request that Obele submit to arrest did not itself constitute a seizure within the meaning of the Fourth Amendment because Obele did not comply. See Brower v. Cnty of Inyo, 489 U.S.

13

593, 598–599 (1989). Thus, it is immaterial whether that request was supported by probable cause. According to Obele's allegations, the seizure only occurred after he had begun to resist arrest, meaning that the arrest itself was lawful. Obele's claims against Pilgrim fail.[7]

### D. Allegations Concerning the Town of Brookline

Obele asserts various causes of action against the Town of Brookline across his several complaints. These are discussed in turn.

#### 1. *Count I: Fourth Amended Analysis*

In Count I of his Amended Complaint, Obele asserts that the Town is liable for Merrigan's alleged violations of his Fourth Amendment rights under Section 1983 because of its failure to adequately train and supervise its officers. Local governments are "persons" subject to liability under Section 1983 when an official policy or custom causes a constitutional tort. See Monell v. Dep't of Soc. Servs., 436 U.S. 658, 690 (1978). To impose municipal liability under Section 1983 for a violation of constitutional rights resulting from governmental inaction or omission, a plaintiff must show: "(1) that he possessed a constitutional right of which he was deprived; (2) that the municipality had a policy; (3) that this policy 'amounts to deliberate indifference' to the plaintiff's constitutional rights; and (4) that the policy is the 'moving force behind the constitutional violation.'" Oviatt ex rel. Waugh v. Pearce, 954 F.2d 1470, 1474 (9th Cir. 1992) (quoting City of Canton v. Harris, 489 U.S. 378, 389–91 (1989)).

Obele has not adequately alleged that the Town has a custom or policy of violating the Fourth Amendment. Rather, his Proposed Second Amended Complaint claims the Town practices racially discriminatory policing and that its officers "target black citizens in a manner

---

[7] As was the case with Officer Vragovic, the parties have assumed in their briefing that these claims are properly brought against Pilgrim despite the fact that nowhere in the Proposed Second Amended Complaint is it alleged that Pilgrim was responsible for Obele's arrest.

14

different than those of other races." Doc. No 30-1 at 13. Consequently, most of Obele's allegations regarding the Town's policies and customs involve incidents in which no discernable Fourth Amendment violation occurred. See, e.g., id. at 10–11 (discussing allegations of racial bias in handling of citizen complaints); see also id. at 19–21 (alleging Brookline police falsely initiated noncustodial criminal proceedings against several black citizens). Obele does describe incidents in which it is possible to discern potential Fourth Amendment claims. See, e.g., id. at 12 (alleging police "falsely charged [a] Hispanic couple"). But these threadbare allegations lack sufficient factual details to allow the reasonable inference that the Fourth Amendment was in fact violated. Obele has therefore failed to adequately plead a custom or policy, meaning his claim against the Town under Count I fails.

  2. *Count II: Fourteenth Amended Analysis*

In Count II of his Amended Complaint, Obele asserts that the Town is liable for an alleged violation of the Equal Protection Clause of the Fourteenth Amendment, as stated against Officer Merrigan, under a Monell theory of liability. After a careful review of the detailed factual allegations contained in Obele's Proposed Second Amended Complaint, Doc. No. 30-1 ¶¶ 20–67, the Court concludes Obele has plausibly stated a claim within the meaning of Rule 12(b)(6)'s standard for preemptory dismissal.

  3. *Remaining Counts as to the Town of Brookline*

In Count V of the Amended Complaint, Obele alleges that the Town is liable for the constitutional injuries he claims to have suffered through the actions of Vragovic. Because Obele has failed to allege a constitutional claim against Vragovic, his derivative claim against the Town also fails.

In Count VI of the Amended Complaint, Obele asserts a freestanding Monell claim against the Town. For the reasons already given, Count VI is DISMISSED except as to the Fourteenth Amendment Equal Protection claim which forms the basis of Count II.[8] Counts VII and VIII of the Proposed Second Amended Complaint also seek to assert freestanding Monell claims against the Town. Obele's Motion to Amend is DENIED with respect these proposed Counts as they are duplicative of other claims.

E.   Allegations Concerning the Brookline Police Department

In his Motion for Leave to Amend, Obele states that he wishes to "remove[] Brookline Police Department as a Defendant." Doc. No. 30 at 1. The Court construes this as a motion for voluntary dismissal pursuant to Federal Rule of Civil Procedure 41(a)(2). The motion is ALLOWED, and Defendant Brookline Police Department is DISMISSED.

F.   Allegations Concerning the Proposed Supervisory Defendants

In his Proposed Second Amended Complaint, Obele seeks to add John Canney and Michael Raskin as defendants. Obele claims Lieutenant Canney is liable for the conduct of Officer Vragovic, Doc. No. 30-1 ¶ 178, and that Sergeant Raskin is liable for the conduct of Officer Pilgrim. Doc. No. 30-1 ¶ 256. Obele does not allege that either Supervisory Defendant themselves directly engaged in unconstitutional conduct. Rather he argues they bear supervisory liability for the alleged actions of their subordinates. It is true that "a supervisor who does not directly engage in the unconstitutional behavior may be liable under section 1983." Ramirez-Lluveras v. Pagan-Cruz, 833 F. Supp. 2d 165, 174 (D.P.R. 2011), aff'd sub nom. Ramirez-Lluveras v. Rivera-Merced, 759 F.3d 10 (1st Cir. 2014). But to establish such a claim, Obele

---

[8] As a result of this ruling, Count VI is entirely duplicative of the claim against the Town pleaded in Count II.

16

must show that "the behavior of [a] subordinate[] result[ed] in a constitutional violation." Lipsett v. Univ. of P.R., 864 F.2d 881, 902 (1st Cir. 1988) (citations omitted). Here, the Court has already concluded that Obele has failed to adequately allege that his constitutional rights were violated by Vragovic or Pilgrim. This being the case, his derivative claims against those officers' supervisors must also fail.

### G. Remaining Matters

#### 1. *Obele's Motion for Leave to File Excess Pages*

Obele's Motion for Leave to File Excess Pages (Doc. No. 32) is ALLOWED. The Court pauses, however, to review Obele's filings to date. Obele filed three separate Oppositions to the Officer Defendants' consolidated Motion to Dismiss (one for each officer). Doc. Nos. 26, 27, & 28. This is a violation of Local Rule 7.1, which only allows litigants to file one opposition per motion. Obele also attached an additional ten pages of briefing to one of these Oppositions as an appendix, in violation of Local Rule 7.1's limit on the length of filings.[9] The Court reminds Obele that it expects him to conduct himself in line with all applicable rules in the future, including those governing the length of briefs, L.R. 7.1, and the form and formatting of briefs, L.R. 5.1.[10]

#### 2. *Defendant Moreland*

Nothing in the record indicates that Defendant Moreland has been served. Federal Rule of Civil Procedure 4(m) provides that:

> If a defendant is not served within 90 days after the complaint is filed, the court—
> on motion or on its own after notice to the plaintiff—must dismiss the action

---

[9] In total, Obele has filed ninety-six pages of briefing during this motion sequence. Doc. Nos. 26, 27, 28, & 31. The Court does not anticipate permitting such lengthy filings in the future.

[10] The Court's Local Rules are available through the Court's website: https://www.mad.uscourts.gov/general/rules-home.htm.

17

without prejudice against that defendant or order that service be made within a specified period of time.

More than six months have elapsed since Obele named Moreland in the Complaint. The Court therefore ORDERS Obele to either file proof of service or show cause why Moreland should not be dismissed from the action within fourteen days.

IV.     CONCLUSION

For the foregoing reasons, the Officer Defendants' Motion to Dismiss (Doc. No. 21), the Entity Defendants' Motion to Dismiss (Doc. No. 19), and Plaintiff Obele's Motion to Amend (Doc. No. 30) are ALLOWED IN PART and DENIED IN PART as detailed herein. It is hereby ORDERED:

> 1. Count I of the Amended Complaint is DISMISSED as to Defendants Pilgrim, the Brookline Police Department, and the Town of Brookline. Count II of the Amended Complaint is DIMISSED as to the Brookline Police Department. Count V of the Amended Complaint is DISMISSED in its entirety. Count VI of the Amended Complaint is DISMISSED except with regard to the Equal Protection Clause of the Fourteenth Amendment allegations arising from Obele's interaction with Defendant Merrigan.
>
> 2. Defendants Pilgrim, Vragovic, and the Brookline Police Department are DISMISSED as parties to the case.
>
> 3. Obele's Motion for Leave to Amend (Doc. No. 30) is ALLOWED with respect to the changes reflected in Count IV and paragraphs 1–10 and 20–148 of the Proposed Second Amended Complaint and DENIED in all other respects. Obele shall file a second amended complaint reflecting the changes allowed within fourteen days.

4. Obele shall show cause why Defendant Moreland should not be dismissed from this suit within fourteen days.

5. The Clerk shall remove Obele's private medical records (Doc. No. 30-7) from the public docket and refile these documents under seal.

6. The Clerk shall correct the docket to reflect that docket entry eighteen is a memorandum and not a motion.

7. Obele's Motion for Leave to File Excess Pages (Doc. No. 32) is ALLOWED.

8. Obele's request for oral argument (Doc. No. 33) is DENIED AS MOOT.

9. The Clerk shall schedule a Rule 16 conference to establish a schedule for the only claims that remain in this case, specifically:

   a. Count I: The Fourth Amendment claim against Officer Merrigan arising from (i) the alleged order requiring Obele to remove his shirt, (ii) the alleged search of Obele's backpack, and (iii) the alleged seizure of Obele's possessions.

   b. Count II: The Equal Protection Clause of the Fourteenth Amendment claim against Officer Merrigan and against the Town of Brookline, as to the actions of Officer Merrigan, under a Monell theory of liability.

   c. Count VI: The Equal Protection Clause of the Fourteenth Amendment claim against the Town of Brookline, as to the actions of Officer Merrigan, under a Monell theory of liability.

   d. The claims regarding Defendant Moreland, while not dismissed by this Order, shall not be considered at the scheduling hearing as Moreland has not appeared.

SO ORDERED.

 /s/ Leo T. Sorokin
Leo T. Sorokin
United States District Judge